IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICK MICHAEL KNOST,

    Petitioner,                                     No. CIV S-08-2564 MCE CHS

    vs.

Joseph S. WARSHOLL, II,

    Respondent.                      FINDINGS AND RECOMMENDATIONS

_____/

## I. INTRODUCTION

Petitioner Patrick Michael Knost is a state prisoner proceeding through counsel with a petition for writ of habeas corpus brought pursuant to 28 U.S.C. §2254. Petitioner stands convicted of sexual battery and unlawful sexual penetration in the El Dorado County Superior Court, case P05CR0372, for which he is currently serving a sentence of three years probation plus 141 days (time served) in county jail. The pending petition challenges the constitutionality of petitioner's conviction for unlawful sexual penetration of an unconscious person, a felony violation of Cal. Penal Code 289(d).

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts of petitioner's offense were set forth in the unpublished opinion of the California Court of Appeal, Third District, case C057179:

In September 2004, defendant and Donna were engaged to be married but their almost three-year relationship was faltering. They broke off their engagement early in the month, and Donna asked defendant to move out of her home, where the couple had been living. Defendant continued to stay at Donna's home for the next couple of weeks but they stopped having sex after defendant told her he had been with prostitutes. A medical doctor, defendant had acted as Donna's "treating physician," administering lab tests, Pap smears, and cortisone shots.

On a mid-September evening, while both were at home, Donna asked defendant to help with the intense pain in her elbow. Defendant had given her a cortisone shot for elbow pain a few weeks earlier and he did so again. She went to bed not long after but woke up in the middle of the night from "total pain" in her elbow. Donna asked defendant to give her "something for the pain." Defendant gave her a second shot, this time an injection of the sedative hydroxyzine, which he told her was "quick-acting and short-acting." She quickly fell asleep. The next morning Donna found six Polaroid photographs of defendant's hand spreading open her vagina.

In a September 2005 information the People charged defendant with one count of sexual penetration of an unconscious victim (Pen.Code § 289, subd. (d)[1]) and one count of sexual battery. The People contended the "penetration" occurred when defendant used his hand to spread open Donna's vagina to take pictures of her.

Defendant and the People agreed to a June 2007 bench trial. At trial, the People called Donna, two coworkers she had spoken to about the incident, and Sergeant David Baker, the investigating officer, as witnesses. The People also introduced the six Polaroid photographs, a recording of a "pretext" phone call between Donna and defendant under the direction of Sergeant Baker, and a recording of an interview between defendant and Sergeant Baker.

At trial, Donna described what happened that night as follows: "Next thing I remember was [defendant] pulling off the covers on me and shoving his hands in my crotch and pulling on my crotch, and I couldn't even move my body. I was completely drugged. I couldn't even lift my head. And I just remember saying what are you doing, knock it off, knock it off. And I-in the distance

---

[1] Section 289, subdivision (d) provides in relevant part: "[a]ny person who commits an act of sexual penetration, and the victim is at the time unconscious of the nature of the act and this is known to the person committing the act or causing the act to be committed, shall be punished by imprisonment in the state prison for three, six, or eight years. As used in this subdivision, 'unconscious of the nature of the act' means incapable of resisting because the victim meets one of the following conditions: [¶] (1) Was unconscious or asleep. [¶] (2) Was not aware, knowing, perceiving or cognizant that the act occurred..."

remembered hearing something that I thought was a Polaroid camera. [¶] ... [¶] I remember him having sex with me. And me just saying-I couldn't move. I couldn't respond. I couldn't lift an arm. I couldn't lift a head. I was just telling him to knock it off, what are you doing. That's all I remember saying. And just being, like, a limp person laying there."

Before trial, however, Donna said she was unconscious when defendant took the photographs. The morning after the incident, she called a coworker and said she would be late because defendant had drugged her. In a call to the same coworker later that morning, Donna said defendant had taken pictures of her "without her knowledge" and "had sex with her and she was unconscious." In conversations with another coworker, Donna described how defendant had taken pictures of her and had sex with her when she could not move, could not speak, and "did not have any control over anything that was happening."

After reporting the incident to the police, Donna made a "pretext" phone call to defendant under the direction of Sergeant Baker. Defendant never contradicted Donna when she talked to him about how she "was all drugged up from that injection" when he took pictures and had sex with her, nor did he contradict her when she said the injection made her "so wasted" and "totally obliviated." Defendant said "Mm-hmm" when Donna explained that she did not "even remember having sex" and only "remember[ed] ... a Polaroid camera going off."

Sergeant Baker's interview with defendant about the incident was introduced in the People's case-in-chief. When Sergeant Baker asked how the medication defendant injected Donna with "help[s]," defendant responded, "It puts them to sleep." When Sergeant Baker confronted him about the allegation that he had intercourse with her, defendant responded, "How'd she [know] if she had intercourse with me? No, she didn't, she was out of it." At one point, Sergeant Baker said, "[s]he was unconscious and you went in you ... saw her there, these frustrations that you've been having with your personal life, your sexual frustrations, pent up energy ... the issues with her, okay." Defendant replied, "That's why I took pictures."

Defendant testified in his own defense. During direct examination, defense counsel asked defendant if Donna was conscious or unconscious when he took the photographs. Defendant said Donna was unconscious. He also testified that he did not take the photographs for his own sexual gratification, but because, he claimed, she was "frustrated" that she had been exposing herself to other men. He claimed his purpose was "to prevent her from revealing herself in the future." He also testified, however, that he later decided he did not want the pictures, and he gave them to Donna the next morning when they woke up.

3

> When cross-examined, defendant acknowledged he had given Donna an injection "that rendered her unconscious." When the People asked if he knew Donna was unconscious when he took the pictures, defendant replied that he knew she was unconscious "[o]r asleep." When asked to explain how he thought the photographs would prevent Donna from revealing herself to other men in the future, defendant responded, "My thinking was if she knew I had these pictures, then she would not-I could tell her that, you know, if you were to expose yourself again, you could use these and give them to guys. Why don't you just do that."

(Lodged document 1 at 2-6.)

The trial court found petitioner guilty of one count of sexual penetration of an unconscious person (a felony), and one count of sexual battery (a misdemeanor). Petitioner was sentenced to 141 days (time served) in county jail and a three year term of probation. The California Court of Appeal, Third District, affirmed the convictions on direct appeal and the California Supreme Court denied review.

### III.  CLAIMS FOR REVIEW

In the pending petition, petitioner challenges only his conviction for unlawful sexual penetration, claiming that (A) insufficient evidence supported the conviction; and (B) he received ineffective assistance of counsel at trial.

### IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)). This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

The "contrary to" and "unreasonable application" clauses of §2254(d)(1) are different. Under the "contrary to" clause of §2254(d)(1), a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405. As the Third Circuit has explained, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3rd Cir. 1999) (en banc) (emphasis in original). The state court is not required to cite the specific controlling test or Supreme Court authority, so long as neither the reasoning nor the result of the state court decision contradict same. *Early v. Packer*, 537 U.S. 3, 8-9 (2002).

The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case. *Williams*, 529 U.S. at 410. The focus of this inquiry is whether the state court's application of clearly established federal law is objectively unreasonable. *Id*. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. The court will look to the last reasoned state court decision in determining whether the law applied to

5

a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003).

V.  DISCUSSION

    A.    Sufficiency of the Evidence

Petitioner first claims that the evidence was constitutionally insufficient to support his conviction for unlawful sexual penetration of an unconscious victim, a violation of Cal. Penal Code §289(d)(1). Specifically, he contends that the prosecution failed to establish that the victim was unconscious or asleep.

Cal. Penal Code §289(d)(1) prohibits acts of sexual penetration where "the victim is at the time unconscious of the nature of the act and this is known to the person committing the act..." As used in the statute, "unconscious of the nature of the act" means "incapable of resisting because the victim meets one of the following conditions: (1) Was unconscious or asleep; [or] (2) Was not aware, knowing, perceiving, or cognizant that the act occurred..." Cal. Penal Code §289(d)(1)-(2), effective January 1, 2003.

Petitioner contends that the only reliable evidence regarding the victim's state of consciousness came from victim herself, who testified, in relevant part, that she remembered petitioner "pulling off the covers" and "shoving his hands" in her crotch. (RT at 15.) She testified that she remembered telling him to "knock if off" and recalled at one point hearing what she "thought was a Polaroid camera." (RT at 15.) Petitioner correctly points out that the victim appeared to indicate in her trial testimony that she was aware of the sexual penetration at the time the photographs were taken. (RT at 17.)

On the other hand, the victim's co-worker testified that the victim called her the morning after the offense and indicated that "she had found pictures that [petitioner] had taken of her without her knowledge" (RT at 65) and that he "had sex with her while she was unconscious" (RT at 66). The co-worker stated of the conversation generally "I'm not sure of the exact

language [she used]" (RT at 65), but clearly responded in the affirmative when asked whether the victim had stated she was unconscious (RT at 67).  Likewise, petitioner testified clearly and unequivocally at trial that he had given the victim an injection that rendered her "unconscious" and that he knew she was unconscious when he took the photographs.  (RT at 126-127.[2])  Finally, although none of petitioner's pretrial statements specified whether the victim was conscious or

---

[2] Petitioner's direct examination concluded as follows:

> Q: Sir, at the time that you took the pictures of Ms. Rader, was she conscious or unconscious?
>
> A: Unconscious.

(RT at 126.)  In addition, on cross examination, he was questioned and responded as follows:

> Q: But in September 2004, you gave her an injection that rendered her unconscious, didn't you?
>
> A: Yes.
>
> Q: And after you gave her that injection that rendered her unconscious, you then went to her naked body, manipulated it into the position you wanted it, right?
>
> A: Yes.
>
> Q: You then used your fingers to spread apart her vagina, right?
>
> A: Right.
>
> Q: You then took a Polaroid camera and photographed the naked and unconscious Donna Rader?
>
> A: Correct.
>
> Q: All the while you knew she was unconscious, tight?
>
> A: Or asleep.
>
> Q: You knew that because you gave her the substance that rendered her unconscious?
>
> A: Yes.

(RT at 127.)

7

unconscious at the time of the offense, his prior statements in the police interview and pretext telephone call with the victim were consistent with a finding that the victim was unconscious.

On habeas corpus review, sufficient evidence supports a conviction so long as, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); see also *Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam). As stated by the United States Court of Appeals for the First Circuit, the focus under *Jackson* is not the correctness, but rather, the reasonableness of the state judgement. See *Hurtado v. Tucker*, 245 F.3d 7, 19 (1st Cir. 2001). The dispositive question is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).

Under this standard, "*all of the evidence* is to be considered in the light most favorable to the prosecution." *Wright v. West*, 505 U.S. 277, 296 (1992) (quoting *Jackson*, 443 U.S. at 319) (emphasis in original). The prosecution need not affirmatively rule out every hypothesis except that of guilt." *Wright*, 505 U.S. at 296. A reviewing court such as this one must presume- even if it does not affirmatively appear in the record- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id*.

The California Court of Appeal reasoned, with respect to this claim:

> [I]t is not for us to decide whether Donna's trial testimony was more credible or reliable than the other evidence before the trial court on the issue of whether she was conscious. The trial court reasonably could have determined that what Donna told her coworker the day after the incident and her other pretrial statements were more accurate than what she testified to nearly three years later, particularly given that defendant's statement to Sergeant Baker and his testimony at trial supported Donna's initial version of events. Indeed, the trial court reasonably could have concluded that when Donna testified at trial, she exaggerated her recollection of the incident, with the misguided belief that doing so would bolster the case against defendant and ensure that he would be found guilty.... [¶] ...In summary, there was sufficient evidence to support the trial court's finding that Donna was unconscious at the time of the penetration.

(Lodged document 1 at 9.)

Again, the focus under the standard of *Jackson* is not the correctness, but the reasonableness of the decision. It is irrelevant whether a reviewing court such as this one agrees or disagrees with the fact finder's conclusion. Presuming, as this court must, that the trial court resolved all conflicts in the evidence regarding the victim's consciousness in favor of the prosecution, the record evidence reasonably supports a conclusion that petitioner was guilty beyond a reasonable doubt. The state appellate court's decision was not an unreasonable application of the *Jackson* standard nor was it based on an unreasonable determination of the facts in light of the evidence.

          B.      Ineffective Assistance of Counsel

Petitioner further claims that his unlawful sexual penetration conviction should be set aside because he received ineffective assistance of counsel at trial. Specifically, petitioner contends that trial counsel (1) failed to move for a judgment of acquittal at the close of the prosecution's case and (2) elicited and then failed to object to inadmissible testimony from petitioner that the victim was unconscious at the time of penetration.

A showing of ineffective assistance of counsel has two components. First it must be shown that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In assessing an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance,'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (*quoting Strickland*, 466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all significant decisions made." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (*citing Strickland*, 466 U.S. at 689).

The second factor required for a showing of ineffective assistance of counsel is actual prejudice caused by the deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice may be found where "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Id*. at 694.

### 1. Failure to bring Motion to Acquit

Petitioner contends that trial counsel should have made a motion to acquit after close of the prosecution's case pursuant to Cal. Penal Code § 1118. Under section 1118, a criminal defendant in a case tried by the court without a jury can move for entry of judgment of acquittal of one or more of the charged offenses after the close of the prosecution's case. The motion shall be granted "if the court, upon weighing the evidence then before it, finds the defendant not guilty of such offense or offenses." Cal. Penal Code §1118. This statute was designed to terminate a prosecution at the earliest possible time when the prosecution's own evidence is insufficient to support a conviction. *People v. Norris*, 95 Cal.App.4th 475, 479 (2nd Dist. 2002).

Petitioner argues that the trial court would have granted such a motion brought with respect to the unlawful sexual penetration charge, because the victim testified that she remembered the penetration, which demonstrated that she was not unconscious at the relevant time. The California Court of Appeal held, with respect to this claim:

> A motion for acquittal should be granted when the People fail to introduce substantial evidence-"evidence that is credible and of solid value"-to support a rational trier of fact finding the elements of the charged crimes proved beyond a reasonable doubt. (*People v. Guardado* (1995) 40 Cal.App.4th 757, 760-761.)
>
> Defendant contends "the only evidence" the People presented on the element that Donna was unconscious at the time of penetration was her own testimony, which actually supported the conclusion she was *conscious* at that time. Therefore, defendant asserts, he received ineffective assistance of counsel because the People failed to prove that Donna was unconscious beyond a reasonable doubt, a trial judge would have granted a motion for acquittal, and there was no rational tactical purpose for defendant's counsel not to make the motion.
>
> We disagree because, as we have explained already, Donna's testimony was not the only evidence on this point in the People's case-in-chief. The People also introduced evidence of Donna's statement to her coworker the day after the incident that she was "unconscious," her other pretrial statements that she was "all

1  drugged up," "wasted," and "totally obliviated," and evidence of
2  defendant's statements and adoptive admission to Sergeant Baker
   that Donna was unconscious when he took the pictures. This
3  evidence was substantial evidence of the "unconscious" element of
   the crime. Therefore, had defendant's counsel made a motion for
4  acquittal at the close of the People's case-in-chief, there would not
   have been a reasonable probability of a more favorable
5  determination. Accordingly, there was no ineffective assistance of
   counsel for failure to make a section 1118 motion. (See *People v.*
6  *Constancio* (1974) 42 Cal.App.3d 533, 546 ["It is not incumbent
   upon trial counsel to advance meritless arguments or to undertake
7  useless procedural challenges merely to create a record
   impregnable to assault for claimed inadequacy of counsel"].)

8  (Lodged document 1 at 11-12.)

9  The unconscious element of petitioner's unlawful sexual penetration offense

10 required a showing that the victim was "unconscious of the nature of the act." Cal. Penal Code

11 §289(d). "Unconscious of the nature of the act" means incapable of resisting because the

12 victim... (1) [w]as unconscious or asleep, or (2) [w]as not aware, knowing, perceiving, or

13 cognizant that the act occurred." Cal. Penal Code § 289(d).

14 As the state appellate court observed, the victim's testimony was not the only

15 evidence offered in the prosecution's case on this element.  There was evidence that she told a

16 coworker the day after the offense that she was unconscious at the time.  In addition, during

17 petitioner's police interview, he admitted that he gave the victim an injection to put her to sleep

18 and stated that she was "out of it."  (CT at 188, 197-98.)  As noted by the state appellate court,

19 Sergeant Baker stated at one point "She was unconscious and you went in you- uh- you know you

20 saw her there, these frustrations that you've been having with your personal life, your sexual

21 frustrations, pent up energy- uh- the issues with her, okay."  (CT at 197.)  Petitioner did not deny

22 that the victim was unconscious, but instead stated "That's why I took the pictures."  (CT at 197.)

23 The overall transcript of petitioner's police interview as well as the transcript of the pretext

24 telephone call from the victim both supported a conclusion that the victim was so incapacitated

25 during the offense that she must have been unconscious or, in the alternative, in and out of

26 consciousness during that period of time.  In this regard, contrary to petitioner's assertion, the

11

victim's unwavering testimony to certain recollections did not demonstrate that she was actually conscious the whole time, however brief or long it was, that the unlawful sexual penetration was taking place.

At the conclusion of the court trial, the presiding judge gave a statement regarding his reasons for finding petitioner guilty. On the issue of unconsciousness, he reasoned:

> The third element is that the other person was unable to resist because she was unconscious of the nature of the act. In the evidence in this case, testimony from the defendant himself, he indicated that the victim in this case was unconscious after the second injection and he knew that she was unconscious.
>
> The court also notes that the testimony of the victim in this case, although her testimony indicated she was, I'll say, at least partially aware of when describing the penetration, she said she felt a tugging and a hand inside of her and heard the sound of a Polaroid camera, what she believed to be a Polaroid camera clicking. She was not able to or did not, at least in her testimony, articulate a specific digital penetration because of her drugged state. So she-- the Court would indicate that evidence would also support her being unable to resist because she was unconscious of the specific nature of the act.

(RT at 171-72.) Thus, the trial court appeared to conclude that, although the victim testified as to specific recollections from that night, the vagueness of her description and inability to better describe the actual penetration supported a finding that she was unconscious of the nature of the act (i.e., incapable of resisting because she was unconscious or asleep or not aware, knowing, perceiving, or cognizant that the act occurred).

The state appellate court noted that a motion for acquittal under section 1118 of the California Penal Code should be granted where the People have failed to introduce "substantial evidence," that is, "evidence that is credible and of solid value," to support a rational trier of fact finding the elements of the charged crimes proved beyond a reasonable doubt. *People v. Guardado*, 40 Cal.App.4th 757, 760-761 (2005). Here, it was determined that the prosecution had presented substantial evidence during its case in chief on the required element of unconsciousness. Accordingly, the state appellate court reasoned, there was no reasonable

likelihood that the trial judge would have granted a motion to acquit. On the record before this court, the state appellate court's determination is not contrary to, or an unreasonable application of the prejudice prong of the *Strickland* standard, nor is it based on an unreasonable determination of the facts in light of the evidence.

### 2. Inadmissible or Prejudicial Testimony

Petitioner contends that counsel elicited inadmissible, prejudicial testimony during his direct examination and then failed to object when the prosecution elicited similar testimony on cross examination. Specifically, counsel ended his direct examination with the question, "Sir, at the time you took the pictures of Ms. Rader, was she conscious or unconscious," to which petitioner replied, "Unconscious." (RT at 126.) The prosecutor then asked a series of leading questions regarding the victim's consciousness to which defense counsel did not object. (RT at 127.)

Citing California evidentiary law, petitioner argues that such opinion testimony was inadmissible because only the victim could properly testify about her state of mind at the time. Petitioner asserts that as a lay witness he could only testify to his opinion that she *appeared* to be unconscious or asleep. See *People v. Chapman*, 38 Cal.4th 344, 397 (2006) (a lay witness "may testify about objective behavior and describe behavior as being consistent with a state of mind"). Petitioner fails to cite any authority for his assertion that a victim's consciousness qualifies as a "state of mind" in this manner under California evidentiary law, and a thorough search reveals none. Accordingly, there is no reasonable likelihood that the trial court would have granted a motion by counsel to exclude petitioner's statements on the ground that the testimony was inadmissable.[3]

---

[3] Even assuming, for the sake of argument, that the victim's consciousness qualifies as a "state of mind" under state evidentiary law, the prosecutor would still have elicited petitioner's testimony that she appeared to be unconscious or asleep. Petitioner is a medical doctor and his testimony that she appeared to be unconscious or asleep would be sufficiently reliable to support a fact-finder's conclusion that she was indeed unconscious or asleep. Moreover, the elements of the offense of unlawful sexual penetration include that the victim is unconscious of the nature of

As to petitioner's allegation regarding the prejudicial nature of the testimony elicited by counsel, the California Court of Appeal reasoned:

> We conclude defendant has failed to show ineffective assistance of counsel because the record establishes that his trial counsel had a tactical reason for offering (and not objecting to) evidence that Donna was unconscious at the time defendant photographed her.
>
> As we have noted, by not refuting Sergeant Baker's assertion in his interview with defendant that Donna was unconscious when he took the photographs, defendant effectively admitted she was. Perhaps because of this adoptive admission-and/or perhaps because of his expectation that Donna would testify at trial that she was unconscious-it appears defendant's trial counsel decided to try to avoid a conviction primarily by challenging the evidence that defendant acted for the requisite purpose of sexual arousal, gratification, or abuse, which applied to both crimes with which defendant was charged. Specifically, counsel argued that when defendant took the photographs of Donna's genitalia, he did not act for the purpose of "sexual arousal" or "sexual gratification," and he also did not act for the purpose of "sexual abuse"-which includes "the purpose of insulting, humiliating, or intimidating" the victim (*In re Shannon T.* (2006) 144 Cal.App.4th 618, 622)-because she was unconscious when he took the photographs, and he gave the pictures to her before he tried to make any use of them. Thus, the fact that Donna was unconscious at the time of the incident was critical to counsel's trial strategy.
>
> At oral argument, defendant's appellate counsel appeared to suggest that trial counsel's strategy was unreasonable because felony sexual penetration does not require that the perpetrator act with the purpose of sexual arousal, gratification, or abuse, and thus by soliciting evidence that Donna was unconscious to defeat the charge of misdemeanor sexual battery, trial counsel "sew[ed] up the fact that she was unconscious" and thereby exposed defendant to conviction of the felony sexual penetration charge. This argument fails because, as we have noted, acting with the purpose of sexual arousal, gratification, or abuse *is* an element of felony sexual penetration. Thus, counsel's trial strategy applied equally to the felony and misdemeanor counts.
>
> Because defendant has failed to show that his trial counsel's tactical decision in this regard was unreasonable, defendant has failed to show he received ineffective assistance of counsel at trial.

---

the act and that this is known to the person committing the act. *See* Cal. Penal Code § 289(d). As respondent asserts, whether or not the victim's consciousness can properly be characterized as her "state of mind," petitioner's knowledge of her consciousness was an element of the charged offense and his testimony establishing this element was certainly admissible.

14

(Lodged document 1 at 13-15.)

As previously discussed, by the time petitioner testified, the prosecution had already presented substantial evidence that the victim was unconscious of the nature of the act at the time that it occurred. That evidence included petitioner's prior statements that he gave the victim an injection to put her to sleep and that she was too out of it to know whether they had intercourse. (CT at 188, 197-98.) The state appellate court concluded that, given petitioner's admissions and the overall state of the evidence at the time of his trial testimony, a decision by counsel not to attack the element of unconsciousness in the defense case was not the result of unacceptable professional judgment. Petitioner has failed to show that this determination was contrary to, or an unreasonable application of the *Strickland* standard for ineffective assistance of counsel.

In addition, petitioner has again failed to show that he suffered prejudice. Even if defense counsel had not elicited the testimony at issue on direct examination, it still would have come out on cross examination. As previously noted, petitioner's testimony that the victim was unconscious when he took the photographs was relevant not only to her state of consciousness, but also to his knowledge of her state of consciousness, both of which were elements of the charged unlawful sexual penetration offense. Petitioner's prior statements in the police interview and during the pretext telephone call supported a finding that he believed the victim to be unconscious when he committed the offense. Under these circumstances, the prosecution would have elicited petitioner's testimony as to the victim's state of consciousness even if defense counsel had not initiated this line of questioning. Accordingly, there is no reasonable likelihood that a more favorable outcome would have resulted absent the alleged deficient performance.

## VI. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for writ of habeas corpus be DENIED.

/////

1    These findings and recommendations are submitted to the United States District
2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3  days after being served with these findings and recommendations, any party may file written
4  objections with the court and serve a copy on all parties.  Such a document should be captioned
5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6  shall be served and filed within ten days after service of the objections.  The parties are advised
7  that failure to file objections within the specified time may waive the right to appeal the District
8  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9  DATED: March 3, 2010

                                    /s/ Charlene H. Sorrentino
                                    CHARLENE H. SORRENTINO
                                    UNITED STATES MAGISTRATE JUDGE